# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| STEPHEN J. MAYE and CAROLYN G. MAYE,<br><br>    Plaintiffs,<br><br>v.<br><br>TIMOTHY J. WORRELL II,<br><br>    Defendant. | Civil Action No. 13-cv-00510 |

## PRELIMINARY INJUNCTION

**THIS MATTER** is before the court on plaintiffs Stephen J. Maye's and Carolyn G. Maye's Verified Complaint, Motion for Preliminary Injunction, and Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction. By previous Order, the court set this motion for hearing and required service of the pleadings on defendant in advance of such hearing. Plaintiffs have filed an affidavit of service indicating that defendant had notice of this hearing. At the time set for the hearing, defendant appeared through counsel and stipulated to entry of a preliminary injunction. Having considered the Verified Complaint and stipulations of counsel, the court will issue the requested Preliminary Injunction.

## FINDINGS and CONCLUSIONS

**I.    Standard**

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir.2003). A plaintiff seeking a

1

preliminary injunction must give notice to the opposing party under Federal Rule of Civil Procedure 65 and, at the hearing, must establish the following: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Moore v. Kempthorne, 465 F.Supp.2d 519, 525 (E.D.Va.2006) ("[t]he standard for granting either a TRO or a preliminary injunction is the same"). The most recent test was adopted by the Court of Appeals for the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir.2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir.2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir.1977) (providing a four-pronged balance of the hardships test). The Winter Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375.

**II.    Discussion**

    **A.    Likelihood of Success on the Merits of Plaintiffs' Claims**

The court finds that plaintiffs will likely prevail on the merits of their defamation claims as it appears, at least from the materials now before the court, that defendant's alleged statements are both injurious and false. There are two separate torts encompassed by the term "defamation," those being libel and slander.

Generally, libel is written while slander is oral. "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel." Gaunt v. Pittaway, 135 N.C.App. 442, 447 (1999)(citations

2

omitted). The elements of slander are that a statement (1) was made to a third person and (2) that such statement was false. Andrews v. Elliot, 426 S.E.2d 430, 432 (N.C. Ct. App. 1993).

> A slander per se occurs when considered alone without explanatory circumstances [the statement] (1) charges that a person has committed an infamous crime... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Gaunt, 135 N.C. App. at 448 (citation omitted). As to a claim for libel *per se*, the North Carolina Court of Appeals defines such a claim as follows:

> a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Clark v. Brown, 99 N.C.App. 255, 277, *disc. review denied*, 327 N.C. 426 (1990). Clearly, the statements allegedly made by defendant, if later proven, charge a most infamous crime and subject plaintiffs to public ridicule, contempt, or disgrace. Plaintiffs have further verified that defendant has publicly admitted that his alleged claims are false and supported such with exhibits. Thus, the court finds this factor weighs in favor of preliminary injunctive relief.

## II. Irreparable Harm

While it is clear that plaintiffs have already suffered harm, the court has concluded that if such statements were allowed to remain posted online or otherwise disseminated, plaintiffs would suffer additional harm through perpetuation of the alleged injurious falsehoods. Thus, plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief. The court finds that this factor weighs in favor of preliminary injunctive relief.

## III. Balance of the Equities

The court is mindful of the importance of protecting an individual's right to free speech. Such right is not, however, unfettered and certainly has historical limits where such right is used

3

to wrongfully harm another who is not a public figure. While falsity alone does not bring speech outside the protections of the First Amendment, the knowing and reckless making of false statements does in certain circumstances. See United States v. Alvarez, __ U.S. __, 132 S.Ct. 2537, 2539 (2012). Nothing in the pleadings before the court indicates that plaintiffs are "public figures" who must endure a certain amount of ridicule. New York Times Co. v. Sullivan, 376 U.S. 254 (1964) (providing substantial protection for speech about public figures). Further, taking plaintiffs allegations as true, such alleged statements would be both knowing and reckless.

Content-based restrictions on speech are limited to the few "'historic and traditional categories [of expression] long familiar to the bar,' " United States v. Stevens, 559 U.S. 460, ___, 130 S.Ct. 1577, 1584 (2010). Among those historic exceptions is defamation. New York Times Co., supra. The record before the court reveals that plaintiffs are private people and not public figures, that defendant is allegedly engaged in a personal attack on plaintiffs through the deliberate, knowing, and reckless making of false statements concerning plaintiffs. Further, it appears that defendant, the former son-in-law of plaintiffs, is allegedly attempting to harm his former in-laws based on disharmony stemming from the dissolution of marriage with their daughter.

The balance of the equities clearly indicates to the court that defendant's right to freely engage in speech is outweighed by the inequity of allowing the perpetuation of the alleged falsehoods to continue during the pendency of this action. The court finds this factor weighs in favor of preliminary injunctive relief.

**IV.    Public Interest**

Finally, the court has considered the public interest. While it cannot be said that the internet is generally a source for reliable information, the public does have a right not to be

bombarded with alleged falsehoods of the sort that are among the most base and vile allegations that can be leveled against a family. Indeed, the public could well be incensed by such allegations and led to believe that such contentions are true simply by their perpetuation on the internet and by other means   Preventing the perpetuation of false and misleading statements is in the public interest.  Scotts Co. v. United Industries, 315 F.3d 264, 286 (4th Cir.2002). The court finds this factor weighs in favor of preliminary injunctive relief.

IV.     **Conclusion**

Having carefully considered all four factors, the court finds that the entry of a preliminary injunction is necessary to protect plaintiffs from ongoing and irreparable harm during the pendency of this action.  Such harm to plaintiffs significantly outweighs any harm that defendant may incur as a result of the entry of the injunction.

Finally, the Federal Rules of Civil Procedure state that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The amount of bond is within the discretion of the Court.  Maryland Dept. of Human Resources v. U.S. Dept. of Agriculture, 976 F.2d 1462, 1483 (4th Cir. 1992).  The court here finds that an unsecured bond of $100, given upon oral promise of plaintiffs made or to be made at a later date, is sufficient to cover defendant's costs or damages should it later be determined that defendant was wrongfully enjoined.

**ORDER**

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Preliminary Injunction is hereby **GRANTED**.  Pending a trial on the merits, defendant, his agents, representatives, and

those acting in concert with him, be and hereby are preliminarily enjoined as follows:

1. Defendant must immediately cease and desist from publishing, directly or indirectly, false or defamatory statements concerning Plaintiffs by any means whatsoever, including, but not limited to, publication using the Internet, electronic mail (e-mail), letters, correspondence, in person remarks, and telephonic communication, which by way of example and not limitation, are of the type set forth in Exhibits A through G attached to the Complaint in this matter.

2. Defendant must immediately remove all postings containing false and defamatory statements concerning Plaintiffs that he has published, directly or indirectly, or caused to be published on the Internet, pending further Order of this Court.

3. Defendant must preserve all documents, information, and evidence relevant to this litigation within his possession, custody or control; including, but not limited to, documents currently stored on his personal computer(s) or other computer(s) over which he has possession, custody, or control, and any personal digital assistant, mobile telephone, or other hardware, including any information stored on backup media. Any deletion, alteration or destruction of documents, information, and evidence in violation of this paragraph shall result in Defendant being held in contempt or an Order from the Court that the allegations against Defendant shall be taken as true and established.

Signed: October 8, 2013

Max O. Cogburn Jr.
United States District Judge